A11A0904. WILLIAMS v. COBB COUNTY FARM BUREAU, INC. et al.

(718 SE2d 540)

ANDREWS, Judge.

Charles Williams appeals from the trial court's grant of summary judgment to Cobb County Farm Bureau, Inc., Russell Smith, and Georgia Farm Bureau Mutual Insurance Company. Williams sued Georgia Farm Bureau Mutual Insurance Company for age discrimination under the Age Discrimination in Employment Act (ADEA); sued Russell Smith for intentional infliction of emotional distress, invasion of privacy, and tortious interference with employment relations; sued both Cobb County Farm Bureau and Georgia Farm Bureau Mutual Insurance Company as vicariously liable for the acts and omissions of defendant Smith; and sued for punitive damages against all defendants. After reviewing the record, we conclude that defendants were entitled to summary judgment on Williams's claims and affirm.

The record shows that Williams was a district sales manager for Georgia Farm Bureau Mutual Insurance Company ("company"). Russell Smith is a radio broadcaster and a farmer. He serves as a volunteer member of the board for Cobb County Farm Bureau. Cobb County Farm Bureau is a not-for-profit corporation that provides various services to Georgia Farm Bureau Mutual Insurance Company. The company pays a fee to Cobb County Farm Bureau in exchange for office space, management and clerical support.

This case arose when Williams was asked to help develop a plan to increase the sale of life insurance policies for the company. A meeting to present the plan was scheduled and was attended by representatives from the different Georgia Farm Bureaus around the State. Russell Smith attended as a representative from Cobb County Farm Bureau. George Hoyle, one of Williams's co-workers, made the presentation. After the presentation, several people expressed displeasure with the life insurance plan.

There was testimony that Smith stated that "all we're doing is laundering money through Southern Farm Bureau." According to

Hoyle's affidavit and Williams's deposition, however, Smith accused the people responsible for the plan of being "crooks" and "money launderers."

After the meeting, Williams sent an e-mail from his company e-mail address to his 14 agency managers, the company's director of sales, and the sales staff in the company's Macon office. The e-mail stated in pertinent part:

> We have a lot of outside meddling and a couple of people with axes to grind and one radical %$#%$%&% sending emails to our leadership trying to do us damage. If we have to call on the KKK I think several of you know where we can find some poles already soaking and ready to burn and I have several volunteers who have ski mask [sic] and a few pick ax handles they are read [sic] to limber up!

Williams admitted that he was referring to Smith as the "one radical %$#%$%&%." Williams was suspended with pay the Monday morning after he sent the e-mail and was fired one week later.

Williams filed this suit, and all defendants moved for summary judgment. The trial court granted the motions, and this appeal followed.

Summary judgment is proper when the evidence, construed in the nonmovant's favor, shows that no issue of material fact remains and the movant is entitled to judgment as a matter of law. A defendant may prevail on summary judgment "by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). We review the trial court's grant or denial of summary judgment de novo. See *Carter v. Parish*, 274 Ga. App. 97 (616 SE2d 877) (2005).

1. In his first enumeration of error, Williams contends that the trial court erred in granting summary judgment on his age discrimination claim against the insurance company. Williams has submitted no evidence, however, to support his claim of age discrimination beyond the fact that he was 67 years old, was fired, and was replaced by a younger employee.

The current law is that to support a claim of age discrimination a plaintiff must show that, but for his age, he would not have been fired. Moreover, the burden never shifts to the employer to prove a non-age related reason for the firing. See *Gross v. FBL Financial Svcs.*, 557 U. S. 167 (129 SC 2343, 2351, 174 LE2d 119) (2009). The undisputed deposition testimony was that management agreed that there was no choice but to terminate Williams after he sent the

offensive e-mail from his company e-mail address.

Further, Williams's argument on appeal in support of this enumeration that Smith somehow influenced the company to fire Williams after he sent the e-mail, contributes nothing in support of an age discrimination claim. Accordingly, there is no merit to this enumeration.

2. Next, Williams claims that the trial court erred in granting summary judgment to Smith on Williams's claims for intentional infliction of emotional distress, false light invasion of privacy, and tortious interference with Williams's employment relationship. In support of these claims, Williams submitted George Hoyle's affidavit stating that Smith got up at the meeting and referred to Williams, Hoyle, and others responsible for the plan to increase life insurance sales as being guilty of "money laundering." The affidavit also stated that it was announced at a Georgia Farm Bureau meeting that Williams was fired because Smith threatened to go public with Williams's e-mail if the company did not fire Williams.

(a) *Intentional infliction of emotional distress*. In order to support this claim, a plaintiff

> must show that [he] suffered severe emotional distress as a result of intentional or reckless conduct that is extreme and outrageous. The alleged conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Whether conduct rises to the requisite level of outrageousness to sustain a claim is a question of law.

(Punctuation and footnotes omitted.) *Law v. Harris*, 295 Ga. App. 628, 628-629 (673 SE2d 14) (2009).

Williams has submitted no evidence that would support this claim. As appellees point out, Smith never mentioned Williams by name when he allegedly referred to the group in favor of this life insurance plan as "crooks" performing "money laundering." Moreover, Williams has failed to submit any evidence showing that he suffered any emotional distress. In his deposition, Williams testified that he was in an "okay mood" after the meeting and nobody ever came up to him after the meeting and said they thought he was a crook or was laundering money. In fact, Williams's only claim of distress was "I told you, I didn't sleep good and focused on the situation continually. I think that's damage enough."

That is not sufficient to show "severe emotional distress."

[E]motional distress includes all highly unpleasant mental

> reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is *extreme* that liability arises. The law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it.

(Citation and punctuation omitted.) *Peoples v. Guthrie*, 199 Ga. App. 119, 121 (404 SE2d 442) (1991). See also *Martin v. North American Van Lines*, 226 Ga. App. 187, 190 (485 SE2d 815) (1997), holding that stomach aches, indigestion, fatigue, and irregular sleep were not sufficient because "[l]iability for intentional infliction of emotional distress clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." (Punctuation omitted.) Id. at 190 (2) (c). Thus, the trial court did not err in granting summary judgment on this claim.

(b) *False light invasion of privacy.*

> To establish a claim of false light [invasion of privacy], a plaintiff must show the existence of false publicity that depicts the plaintiff as something or someone which he is not. Next, the plaintiff must demonstrate that the false light in which he was placed would be highly offensive to a reasonable person.

(Citation and punctuation omitted.) *Blakey v. Victory Equip. Sales*, 259 Ga. App. 34, 37 (576 SE2d 288) (2002). The claim of disclosure of embarrassing private facts requires that "(a) the disclosure of private facts must be a public disclosure; (b) the facts disclosed to the public must be private, secluded or secret facts and not public ones; and (c) the matter made public must be offensive and objectionable to a reasonable man of ordinary sensibilities under the circumstances." (Punctuation omitted.) *Nelson v. Glynn-Brunswick Hosp. Auth.*, 257 Ga. App. 571, 578 (571 SE2d 557) (2002).

First, we note that Williams does not support this claim of error with any specific argument as to each element of the claim or citation to the record; nor does he cite to us any authority on point. As previously stated, when Smith allegedly made these statements, he was responding to a presentation made by Hoyle, not by Williams. Further, there does not appear to be any disclosure of "private, secluded or secret facts." Williams himself stated at his deposition that Smith was referring to the "agency force" when he made these comments. The trial court found that this claim was in essence a claim for defamation which would be precluded by the one-year statute of limitation. See OCGA § 9-3-33.

Finally, Williams cannot support this claim because he has not shown that the false information about which he complains was distributed to the public at large. See *Blakey*, supra at 38 (no public disclosure of doctor's blood test results when limited to employer, hospital administrator, and staff). See also *Peacock v. Retail Credit Co.*, 302 FSupp. 418, 423 (N.D. Ga. 1969) (publication requirement had not been met when a credit reporting agency distributed allegedly false information to its clients, as this was a limited disclosure and not the type of public disclosure required to establish invasion of privacy). Accordingly, the trial court did not err in granting summary judgment to Smith on this claim.

(c) *Tortious interference with employment relationship.*

> [I]n an action for tortious interference with an employment relationship that is terminable at will, the plaintiff must show that a party with no authority to discharge the employee, being activated by an unlawful scheme or purpose to injure and damage him, maliciously *and unlawfully* persuades the employer to breach the contract with the employee. Malice plus injury to business of itself does not, however, constitute the tort of wrongful interference with business. Rather, *an independent wrongful act* is required as well as an injury.

(Punctuation omitted.) *Gunnells v. Marshburn*, 259 Ga. App. 657, 659-660 (578 SE2d 273) (2003).

In this case, management testified that their sole consideration for firing Williams was the offensive e-mail that he sent to other employees. Williams claims that he was told that Smith was demanding his firing and was threatening to publish the e-mail.

Williams submits no evidence, however, that Smith committed an independent wrongful act. "Since the tort was first recognized in the employment context, necessary ingredients include that the interference must be malicious *and* unlawful or wrongful." *Rose v. Zurowski*, 236 Ga. App. 157, 159 (511 SE2d 265) (1999). In *Rose*, this Court held that "divulging truthful information and expressing critical personal opinions about a co-employee's work are not wrongful or unlawful acts." (Punctuation omitted.) Id. The court stated that "instructing a fellow employee to commit perjury and then threatening him when he refuses" constitutes a wrongful act, but "accurately informing an employee's superiors that he owes money to the corporation does not." Id. Here, Williams has failed to allege that Smith's actions were unlawful or wrongful. The trial court correctly granted summary judgment on this claim.

3. In light of our holdings in Divisions 1 and 2 above, we need not

address Williams's claims for vicarious liability for Smith's alleged tortious acts and for punitive damages.

*Judgment affirmed. Phipps, P. J., and McFadden, J., concur.*

DECIDED OCTOBER 14, 2011 —
RECONSIDERATION DENIED NOVEMBER 2, 2011.

*Dennis, Corry, Porter & Smith, George H. Connell, Jr.,* for appellant.

*James, Bates, Pope & Spivey, Duke R. Groover, Marty K. Senn, Downey & Cleveland, Joseph C. Parker, Kelley E. Webb,* for appellees.